IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION
**Case No 1:25-mi-99999**

UNA Plaintiff    v.    Defendant

Petitioner:          Respondents:
uReputation          Meta Platforms, Inc. and Facebook, Inc.

**Petition for Discovery Pursuant to 28 U.S.C. 1782**

uReputation (sometimes referred to as "Petitioner") seeks an order pursuant to 28 USC § 1782 permitting it to obtain documents and deposition testimony from Meta Platforms, Inc. and Facebook, Inc. ("Respondents") for use in two separate foreign proceedings: 1) a regulatory enforcement matter in France (the "French Action") and 2) a litigation matter in Tunisia (the "Tunisian Action"). Both proceedings involve Respondents and subsidiaries of Respondents' release of private data belonging to uReputation and other French and Tunisian citizens and false statements made by Respondents and their subsidiaries regarding uReputation. Respondents released the information to Atlantic Council, which then took the private data and used it in articles and other public statements that falsely accused Petitioner of interfering with foreign elections, creating fake social media accounts, and generally misleading the public. *See* https://www.atlanticcouncil.org/in-depth-research-reports/operation-carthage-how-a-tunisian-company-conducted-influence-operations-in-african-presidential-elections/.

Respondents therefore have information critical to the French regulatory enforcement matter and the litigation in Tunisia. The French matter is based primarily on Respondents' release of private data to Atlantic Council in violation of the GDPR. The Tunisian matter is related to false statements made by both Respondents and Atlantic Council – alone and in concert with one another – regarding uReputation. The following information is therefore relevant and discoverable to both

matters: 1) data and information regarding the Meta user information disclosed to third parties, including the Atlantic Council; 2) communications between Atlantic Council and Respondents regarding uReputation and the release of private user information related to uReputation; and 3) documents and communications related to https://www.atlanticcouncil.org/in-depth-research-reports/operation-carthage-how-a-tunisian-company-conducted-influence-operations-in-african-presidential-elections/ and the false statements contained therein.

### Background

uReputation is a digital communications company based in Tunisia, which primarily operates out of France and Tunisia. Its principal owner is a French and Tunisian national, Lotfi Bel-Hadj. uReputation primarily supports candidates for political office in their social media outreach and communications strategies. In this role, uReputation both creates and manages social media pages for politicians and political parties. Access to social media platforms, including the Instagram and Facebook platforms owned by US-based Meta, Inc., is therefore critical to uReputation's business.

Prior to Meta closing down uReputation's accounts, uReputation worked for political candidates throughout Africa, Europe, and the Middle East, including parliamentary elections, presidential elections, and prime-minister-level elections.

On June 11, 2020, however, Respondents systematically closed all accounts they believed were affiliated with uReputation. This action followed Atlantic Council's publication of "Operation Carthage" on June 5, 2020. *See* Exhibit A. The article's full title is "Operation Carthage: How a Tunisian company conducted influence operations in African presidential elections."

In the Article, Atlantic Council cited a Facebook spokesperson as accusing uReputation of "coordinated inauthentic behavior on behalf of a foreign entity." Ex. A. p. 2. The Article then relies on information provided by Respondents to accuse uReputation of employing "inauthentic Facebook pages" in support of presidential candidates in "10 African countries," including recent elections in Togo and Cote d'Ivoire. *Id.*

Next, the Article discusses several websites and Facebook accounts it claims were associated with either uReputation or Mr. Bel-Hadj. Atlantic Council relied heavily on information provided to it by Facebook, Instagram, and their parent company – Meta – in connection with this reporting. *See* id at 10-20. Indeed, Carvin bragged on social media that Atlantic Council had "exclusive access to the data set prior to removal." *See* Ex. B. p. 2, Carvin, Andy, X Post dated June 5, 2020.

Atlantic Council placed significant emphasis on uReputation's alleged work in Tunisia, Togo, and Cote d'Ivoire, and other African countries. The theme of the article is that Atlantic Council was able to detect supposed improper activity and inauthentic social media pages by relying on what should have been confidential information provided to it by Respondents. Atlantic Council, however, never mentioned the numerous European people and entities for whom uReputation also managed social media pages and platforms. Respondents and Atlantic Council also made several material misstatements of fact, all of which are at issue in the Tunisian Action.

## I.    French Action.

uReputation and its principals filed a regulatory complaint with the French Data Protection Authority ("CNIL") for violation of the General Data Protection Regulation (GDPR) in July 2022. The core allegation in the complaint is that Meta, through Facebook and other subsidiaries

(collectively referred to as "Meta" or "Respondents"), transferred private data belonging to uReputation, Mr. Geldhof, Mr. Bel-Hadj, their clients, and third parties to Atlantic Council (the "transferred data"). These transfers of personal data were made without the knowledge or consent of the individuals and entities whose data was being shared.

To prevail in the French Action, the CNIL must find that the following occurred: 1) the transfer of data from Meta to an unauthorized third party; 2) regarding persons in the territory of the European Union; 3) access, transfer, or processing of the data by a third party (including Respondents); 4) without legally sufficient consent of the individual whose data is accessed, transferred, or processed. Ex. C, Baptiste Dec. ¶ 6.

Petitioner sought CNIL's assistance in obtaining the following information from Atlantic Council and others in the French Action:

1) The purpose of and basis for the data transfers from Meta to Atlantic Council;

2) The type and nature of the personal data collected by Meta and transferred to Atlantic Council;

3) How long Atlantic Council intends to keep the transferred data;

4) The recipients, including third-parties, of the transferred data; and

5) The means and methods by which Atlantic Council, and any third parties acting on their behalf, protected the transferred data.

*See* Ex. C, Baptiste Dec. ¶ 7.  These five categories of information are critical to the CNIL evaluating and, ultimately, finding violations of the GDPR based on Meta's transfer of private user information related to uReputation to Atlantic Council.

## II.      The Tunisian Action

The Tunisian action was originally filed in 2022 and then refiled December 19, 2023. The defendants in that action are Meta, Inc. and Facebook Ireland. Atlantic Council is not a party to that action. Its conduct, however, is very relevant. The Tunisian Action is a civil case in which uReputation seeks to recover damages caused by Meta's: 1) false statements regarding uReputation, including statements published by Respondents; and 2) wrongful closing of uReputation's social media accounts and those of uReputation's clients based, at least in part, on Atlantic Council and Respondents' false and misleading accusations.

According to the Article and social media posts, Atlantic Council did not simply accept a data transfer regarding Petitioner's social media activity from Respondents and report their findings. Instead, Atlantic Council claimed to have "partnered" with Respondents to analyze the data and shared their respective findings with each other. Ex. B. p. 2. This "partnership" resulted in a series of false and misleading public accusations by Atlantic Council and Respondents, closure of Petitioner's social media accounts, closure of social media accounts Petitioner manages for its clients, and a significant loss of business relationships. Id. A Tunisian court-appointed expert estimated that Meta's actions, which were done in concert with Respondents, damaged Petitioner in the amount of $4 million.

### Argument & Citation to Authority

uReputation seeks an order pursuant to 28 U.S.C. § 1782(a) compelling Respondents to produce documents and provide deposition testimony for use in the French and Tunisian proceedings. Section 1782 provides:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use

in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The Supreme Court has held that if the statutory requirements are met, the Court must analyze four factors – known as the *Intel* factors – to determine whether to permit the requested discovery. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). Here, the statutory elements and *Intel* factors are satisfied and discovery pursuant to section 1782 is appropriate.

## I.      The 1782 Statutory Requirements are Satisfied Because uReputation Is An Interested Person Seeking Information For Use In A Foreign Tribunal.

To obtain discovery under section 1782, uReputation must show: 1) that the Respondents are residents of the district or can be found in the district; 2) that uReputation is an "interested person" in the French or Tunisian Action; and 3) the information being sought is "for use in foreign tribunals." *See Intl Corp.*, 542 U.S. at 246, 247-248, 256. All three requirements are met here. First, uReputation is a party to the Tunisia Action and is seeking monetary damages therein, which makes it an interested party. *See C5 Capital Ltd.*, No. 1:24-mc-10 (TNM), 2024 WL 1701650 at *1 (D.D.C. April 18, 2024) (holding that litigants are among the "interested persons" entitled to bring a motion under section 1782). uReputation also initiated the complaint in the French Action. Even though it is technically not a "party" to the French Action, under *Intel Corp.* an entity that initiates a regulatory proceeding with a European institution is an "interested person" for purposes

of section 1782. *See Intl Corp.*, 542 U.S. at 256-57 (holding that a "complainant who triggers a European Commission investigation" is an "interested person" entitled to bring a motion under section 1782.).

Second, both the Tunisian Court and French CNIL constitute foreign tribunals under section 1782. The Tunisian court is a tribunal in the classical sense of the term: a government-created court. The CNIL also qualifies as a tribunal because it is empowered under French law "to collect reports of infringements through different channels in order to carry out investigations, *which can lead to issuing sanctions or rendering orders to comply*." *See* https://www.cnil.fr/en/investigating-and-issuing-sanctions/steps-cnils-law-enforcement-process. The CNIL has the power to conduct hearings, evaluate evidence, issue findings, and order monetary penalties and injunctive relief. *See id.*

The CNIL therefore has the same authority and powers that lead the Supreme Court to conclude that the European Commission was a "foreign tribunal" in *Intel Corp.* The Supreme Court held that "foreign tribunal" included "administrative and quasi-judicial proceedings abroad." *See Intel Corp.*, 542 U.S. at 258. The European Commission qualified because it acted as a "first-instance decisionmaker." *Id.* The CNIL similarly exercises decision-making powers by finding violations, assessing appropriate penalties, and issuing remedial orders. *See* https://www.cnil.fr/en/investigating-and-issuing-sanctions/steps-cnils-law-enforcement-process (asserting CNIL's authority to issue monetary penalties and require specific conduct to correct past violations of data privacy law). It is therefore a "foreign tribunal," and all statutory requirements under section 1782 are satisfied.

Finally, Respondents have offices and a significant presence within Atlanta and the Northern District of Georgia. Accordingly, Respondents can be "found" in this judicial district. 28 USC § 1782(a).

## II.       The Four *Intel* Factors Weigh In Favor Of Allowing Discovery.

Because the statutory requirements are satisfied, the Court must evaluate the four *Intel* factors to determine whether to authorize the requested subpoena: 1) whether the Respondents are a party to the foreign proceeding; 2) the nature of the foreign proceeding, including the foreign tribunals receptivity to assistance from a US district court; 3) the extent to which the requests would circumvent restrictions on foreign discovery or proof gathering; and 4) the burden on the Respondent of producing the requested information. *See C5 Capital Ltd.*, 2024 WL 1701650 at *2-3 (listing the four factors established by *Intel Corp.*, 542 U.S. at 264-65). All four factors support issuing the requested subpoenas here.

### A.       Respondent is a Non-Party to the French Action

The first factor is satisfied because Respondents are not yet parties to the French Action and the French Action has not yet exercised jurisdiction over Respondents. In *Intel Corp.*, the Supreme Court reasoned that a foreign tribunal would have a greater need for assistance obtaining discovery from a non-party than from a party because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel Corp.*, 542 U.S. at 244. The fact that a respondent is a party to the foreign proceeding is not, however, a categorical bar to section 1782 discovery; the respondent in *Intel Corp.* was a party to the European Commission proceedings. *Id.* Instead, the key inquiry is whether the foreign tribunal can order the respondent to produce evidence.

The first factor is satisfied here because Respondents are not yet parties to the French Action, in which uReputation has lodged a regulatory complaint against them. Even though Respondents are named in uReputation's complaint to CNIL in the French Action, CNIL has not yet exercised any jurisdiction over Respondents or initiated any hearings or actions against Respondents. Accordingly, the CNIL has not exercised any ability to obtain documents and testimony from Respondents.

**B.    The nature of the foreign proceedings supports permitting discovery.**

The nature of the two foreign proceedings also weighs in favor of permitting discovery. The Court "presume[s] that foreign tribunals will be receptive to evidence obtained here" absent "authoritative proof" to the contrary. *In re Pishevar*, 21-mc-105, 2023 WL 2072454 at *3 (D.D.C. Feb. 17, 2023). The presumption that the foreign tribunal will be receptive to evidence obtained in the United States is high – almost absolute. In *Intel Corp.*, for example, the Supreme Court held that the presumption was not overcome even though the European Commission stated "that it d[id] not need or want the District Court's assistance" because the Commission may, at some point, need or want it in the future. *See Intel Corp.*, 542 U.S. at 265-66.

Here, nothing in the record presents "authoritative proof" that would overcome the strong presumption outlined in *Intel Corp.* As an initial matter, the Tunisian Action is almost identical to the foreign proceeding at issue in *In re Pishevar*, in which the court granted a 1782 motion. The petitioner there was the subject of a series of false and defamatory news articles, all of which were based on a fake police report sourced to a Washington DC-based company, which provided the fake report to persons in the UK. *In re Pishevar*, 2023 WL 2072454 at *1. The petitioner sought information from the DC-based company behind the fake police report for use in UK proceedings against the UK leaker and publishers of the fake accusations. *Id.* at *3 This court ordered the

discovery, noting that section 1782 was appropriate for the criminal and civil proceedings in the UK and that UK counsel believed the discovery sought would be useful to it. *Id.*

The French Action is also appropriate for assistance from this Court pursuant to section 1782. The GDPR is a consumer protection law meant to guarantee data privacy for individuals residing in the European Union. The CNIL is the French agency charged with adjudicating violations thereof. In doing so, it relies heavily on private citizens to report violations. The CNIL notes that "Complaints and reports of infringements (which can be anonymous) related possible breaches of GDPR are addressed to the CNIL. Investigations are conducted to check these practices and ensure, if applicable, that the rights of the complainants have been complied with." See https://www.cnil.fr/en/how-does-cnil-conduct-its-investigations. The GDPR's consumer-protection nature and CNIL's complaint and reporting process provide strong evidence that the CNIL would accept this Court's assistance in obtaining documents relevant to Respondents' significant GDPR violations.

### C.    The third *Intel* factor is satisfied because uReputation is not seeking to circumvent French or Tunisian law.

The third *Intel* factor – non-circumvention – has its roots in comity among courts and legal systems. But here, as in *In re Pishevar*, 2023 WL 2072454 at *4, "[n]othing in the record indicates that [uReputation] is seeking discovery here via Section 1782 to circumvent the proof-gathering rules or policies of either this Court or the courts of [France or Tunisia]." Instead, uReputation seeks to accomplish two goals: 1) assist the CNIL in fulfilling its mandate to adjudicate and enforce violations of data privacy law and 2) assist the Tunisian Court in adjudicating the commercial claims at issue there. Further, neither French or Tunisian law restricts uReputation from seeking

and presenting evidence obtained through section 1782. In fact, the French CNIL encourages entities like uReputation to report violations of the GDPR.

### D.    The final *Intel* factor is satisfied because uReputation is not seeking burdensome or irrelevant discovery.

uReputation satisfies the fourth *Intel* factor because the discovery it seeks is narrower than would be permissible under Federal Rule of Civil Procedure 26(a). Section 1782 provides that unless the Court orders otherwise, "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). This Court therefore considers the requests under the same standard as an ordinary discovery request pursuant to Rule 26(a). *See In re Pishevar*, 2023 WL 2072454 at *4 ("The standard in this context is substantially the same as under the Federal Rules of Civil Procedure."); *See also C5 Capital Ltd.*, 2024 WL 1701650 at *3 ("Any remaining discovery disputes must be resolved in a manner that complies with this Court's normal procedures.")

Further, the fact that uReputation might also be able to obtain the same information from Atlantic Council is irrelevant, as section "1782(a) does not require Applicants to exhaust their discovery options with [another party] before seeking discovery from [Respondent]." *C5 Capital Ltd.*, 2024 WL 1701650 at *3; *see also In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2nd Cir. 1992) (rejecting a "quasi-exhaustion requirement" because "requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782.... It would undermine the policy of improving procedures for assistance to foreign and international tribunals by imposing an additional burden on persons seeking assistance from our federal courts for matters relating to international litigation. Additionally, it would

undermine the policy of prompting foreign courts to act similarly based on our own generous example."); *In re Bracha Foundation*, 663 Fed.Appx. 755, 765 (11th Cir. 2016) (same).

Here, as in *C5 Capital Ltd.*, uReputation seeks very narrow documents and deposition testimony, limited to the following topics:

1) The data and information transferred from Respondents to Atlantic Council regarding uReputation and uReputation's clients;

2) Communications between Respondents and Atlantic Council regarding uReputation and uReputation's clients;

3) Efforts Respondents took to verify the accuracy of statements and information they provided to Atlantic Council regarding uReputation;

4) The identity of any third parties with whom Respondents shared the Transferred Data, including identification of the data that was transferred to any such third party; and

5) The basis for Respondents' belief that they can legally transfer the Transferred Data.

These limited requests are far less burdensome than would be authorized under Federal Rules of Civil Procedure 26 or 45. Further, as explained in the Declarations of Mr. Baptiste and Mr. Maddouri (Ex. D), the requests are directly relevant to the French and Tunisian Actions. They are directly relevant to: 1) Respondents' transfer of private data concerning uReputation to Atlantic Council; 2) Respondents' possession and processing of the data; 3) the accuracy of statements Respondents and Atlantic Council made regarding uReputation; and 4) other disclosures of uReputation and its clients' private data. Each of these issues are key to both the French and Tunisian Actions and are targeted to information that will be in the possession, custody, or control of Respondents. The document requests and deposition should therefore be permitted. *See In re*

*Pishevar*, 2023 WL 2072454 at *4 (permitting document requests and deposition testimony relevant to disclosures of false information regarding the petitioner).

### Conclusion

All three statutory requirements are satisfied and application of the four *Intel* factors counsels in favor of permitting uReputation to pursue the limited document requests and deposition. uReputation therefore requests that the Court authorize it to issue a Rule 45 subpoena for documents and deposition testimony to Respondents.

Submitted this 20th Day of June, 2025

**BGD LEGAL & CONSULTING LLC**

*/s/ Daniel L. Delnero*
Daniel L. Delnero

3017 Bolling Way, Suite 130
Atlanta, GA 30305
Telephone: (770) 864-7740
E: Daniel.Delnero@bgdlc.com

Counsel for Petitioner